FILED
CLERK, U.S. DISTRICT COURT
9/16/2019
CENTRAL DISTRICT OF CALIFORNIA
BY: CW DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WASHINGTON, | Case No. CV 18-1770 FMO (AFMx) |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| RITTER, LIEN SALES, INC., et al., | |
| Defendants. | |

Having reviewed and considered all the briefing filed in connection with plaintiff Richard Washington's ("Washington" or "plaintiff") Motion for Summary Judgment or Alternatively Partial Summary Judgment; and Cross Motion for Summary Judgment (Dkt. 53, "Plf. Motion"), and defendant Acquirecorp's Norwalk Auto Auction's ("Norwalk" or "defendant") Cross-Motion for Summary Judgment or Partial Summary Judgment (Dkt. 54, "Def. Motion"), the court finds that oral argument is not necessary to resolve the Motions, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## INTRODUCTION

On March 1, 2018, plaintiff filed a complaint against Norwalk and Ritter, Lien Sales, Inc. ("Ritter"), asserting claims for (1) violations of the California Identity Theft Act ("CITA"), Cal. Civ. Code §§ 1798.93, et seq.; (2) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.; (3) replevin ("claim and delivery"); (4) conversion; and (5) trespass to chattels in connection with the repossession of plaintiff's vehicle. (See Dkt. 1, Complaint at ¶¶ 58-

85).  A few weeks later, plaintiff filed the First Amended Complaint ("FAC"), the operative complaint, asserting the same claims, and adding a claim for violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788, et seq.[1]  (See Dkt. 15, FAC at ¶¶ 74-105).  Plaintiff alleges that he is a victim of identity theft, (see id. at ¶ 1), and that after he notified defendant of this on December 29, 2017, defendant should have immediately returned his repossessed vehicle.  (See id. at ¶¶ 1-8). Defendant did not immediately return the vehicle, and instead sought unpaid storage costs.  (See id. at ¶¶ 2-6).

Norwalk filed an Answer and Counterclaim, (see Dkt. 24), and following the court's granting of plaintiff's motion to dismiss the counterclaims and strike affirmative defenses, (see Dkt.35, Court's Order of May 21, 2018, at 2), filed its First Amended Answer to First Amended Complaint and Counter-Claim.  (Dkt. 36, "Answer & CC").  Plaintiff filed a responsive pleading to the Answer & CC.  (See Dkt. 37).  Plaintiff seeks partial summary judgment with respect to all claims except the claim for replevin.  (See Dkt. 53, Plf. Motion at 1).  Defendant seeks partial summary judgment as to plaintiff's FDCPA and RFDCPA claims, as well as a declaration that it had a lien on plaintiff's vehicle.  (See Dkt. 54, Def. Motion at 2).

## STATEMENT OF FACTS[2]

Plaintiff's vehicle was repossessed on March 25, 2016, at the direction of non-party, City Title Loan, LLC ("City Title").  (Dkt. 53-8, Joint Statement of Uncontroverted Facts ("SUF") at ¶ 30; Dkt. 56-1, Statement of Genuine Dispute ("SGD") at ¶ 30; see also Dkt. 15, FAC at ¶ 1 (identifying City Title)).  On April 4, 2016, City Title had the vehicle, a 2012 Toyota, towed to Norwalk.  (Dkt. 56-1, SGD at ¶ 31; Dkt. 53-2, Declaration of Bill Corbett ("Corbett Decl.") at ¶¶ 6, 10).

I.  2016 ACTION.

On April 4, 2016, plaintiff filed a lawsuit against City Title and several other defendants, including All American Recovery, Inc. ("All American Recovery") arising from the repossession of

---

[1]  Plaintiff subsequently dismissed Ritter.  (See Dkt. 21, Notice of Voluntary Dismissal).

[2]  Unless otherwise noted, the facts are undisputed, contain disputes that are not material, or are provided for background.  In addition, to the extent the court relies on evidence objected to by the parties, their objections are overruled.

his vehicle. (See Richard Washington v. City Title Loan, LLC, et al., CV 16-5427 FMO (AFMx) ("Washington I" or "2016 Action")). The operative complaint in that action asserted the same claims that are asserted in this action, with the exception of the claim for replevin. (Compare Washington I, Dkt. 51, First Amended Complaint at ¶¶ 60-84 with Dkt. 15, FAC at ¶¶ 74-105). In Washington I, plaintiff alleged that All American Recovery was a "vehicle repossession company[,]" (id. at ¶ 46), that repossessed plaintiff's vehicle at City Title's direction, and the vehicle "remain[ed] in the custody and/or control of American Recovery through the date" the action was filed. (Id. at ¶ 44, 48).

On October 13, 2016, as part of its initial disclosures in the 2016 Action, City Title produced an April 4, 2016, letter from City Title to All American Recovery,(Dkt. 56-1, SGD at ¶¶ 33-34), directing All American Recovery to "release the vehicle . . . to Norwark[.]" (Dkt. 53-7, Exh. 16). Despite plaintiff's knowledge as of October 13, 2016, that his vehicle was being stored by Norwalk, plaintiff did not seek to add Norwalk as a defendant in Washington I. (See, generally, Washington I, Dkt.).

On February 26, 2018, after City Title defaulted in the 2016 Action, the court entered default judgment against it. (See Washington I, Dkt 109, Court's Order of February 26, 2018; Dkt. 110, Judgment).

II. INSTANT ACTION.

On December 29, 2017, approximately two months before the court entered default judgment against City Title in the 2016 Action, (see Washington I, Dkt. 109), plaintiff sent a "dispute" letter to Norwalk. (Dkt. 53-8, SUF at ¶ 2; Dkt. 53-2, Exh. 1, "Dispute Letter")). The Dispute Letter stated that plaintiff was "the victim of fraud and identity theft" and that his "car was wrongly repossessed and is now stored with [Norwalk]." (Dkt. 53-2, Exh. 1, Dispute Letter). Plaintiff stated that he would not be paying any debts, including "the daily storage fees" and "demand[ed] the release and return of [his] vehicle immediately." (Id.). Plaintiff attached a police report, text messages between plaintiff and a DMV investigator, a DMV document entitled Lien Satisfied/Legal Owner/Title Holder Release, Secretary of State Information for Extreme Loyalty Inc., and account notes from City Title Loan, the latter of which included a notation stating that

"[t]his is a fraud account associated with Extreme Loyalty Inc." (Dkt. 53-8, SUF at ¶¶ 4-9; Dkt. 53-2, Exh. 1, Dispute Letter at APP 31- 53). Norwalk received the Dispute Letter on January 4, 2018. (Dkt. 53-8, SUF at ¶ 3).

On February 27 and 28, 2018, plaintiff's counsel, Wayne Sinnett, spoke with David Aker, Norwalk's controller, regarding this matter. (See Dkt. 53-8, SUF at ¶¶ 19-20; Dkt. 53-2, Declaration of David Aker ("Aker Decl.") at ¶¶ 2, 7). Norwalk's position was that $8,340 in storage fees were due, calculated at $12 per day for 695 days. (See Dkt. 53-6, Exh. 11, February 28, 2019, email; Dkt. 56-1, SGD at ¶ 26). On February 28, 2018, Aker asked Sinnett to "re-send the documents so that [Norwalk] may review." (Dkt. 53-6, February 28, 2019, email). Instead of sending the documents, plaintiff filed the instant action the next day, (see Dkt. 1, Complaint), and Norwalk was served with the Complaint on March 6, 2018. (See Dkt. 14, Proof of Service). Norwalk continued to seek the collection of the storage fees from plaintiff. (Dkt. 53-8, SUF at ¶¶ 3, 22-23). For instance, on March 12, 2018, Aker called plaintiff directly regarding the storage fees. (See Dkt. 53-2, Declaration of Richard Washington ("Washington Decl.") at ¶¶ 10-12; Dkt. 56-1, SGD at ¶ 27; Dkt. 53-2, Aker Declaration at ¶¶ 11-13). The purpose of the call was to negotiate the storage fees. (Dkt. 56-1, SGD at ¶ 28; Dkt. 53-2, Aker Decl. at ¶ 13).

On March 1, 2018, Norwalk was granted authorization from the Department of Motor Vehicles to conduct a lien sale of plaintiff's vehicle. (Dkt. 53-8, SUF at ¶ 25: Dkt. 53-6, Exh. 8, March 1, 2018, DMV authorization to conduct a lien sale). However, Norwalk did not go forward with the lien sale. (Dkt. 53-2, Aker Decl. at ¶ 18). After consulting with counsel, Norwalk released the vehicle to plaintiff on April 6, 2018. (See id.).

## **LEGAL STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

4

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) ("Celotex").  If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (holding that a party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.").[3]  A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; see Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. See Barlow v. Ground, 943 F.2d 1132, 1134 (9th Cir. 1991), cert. denied, 505 U.S. 1206 (1992).  However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus.

---

[3] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3.

Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.

## DISCUSSION

I. FDCPA.

Both parties seek partial summary judgment as to plaintiff's FDCPA claim. (See Dkt. 53-1, Joint Memorandum of Point and Authorities ("Joint Br.") at 19-26, 41-46). Plaintiff contends that Norwalk falls within the limited-purpose definition of debt collector,[4] (See id. at 21-22), and that defendant has violated § 1692f(6) because it "continued to maintain possession of Washington's vehicle despite knowledge that Norwalk was in possession of Washington's vehicle without a valid security interest." (Id. at 24). Defendant responds that it was not a debt collector under any definition because the FDCPA excludes creditors who are collecting their own debts. (See id. at 20-21 & 41-42).

The FDCPA prohibits "debt collectors" from engaging in various unlawful debt collection practices. See 15 U.S.C. § 1692e. A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). A "debt collector" is generally defined as (1) "any person who [engages] in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6); Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1208 (9th Cir. 2013). The FDCPA also contains a more limited definition ("limited-purpose definition") of debt collector,

---

[4] Plaintiff also contends in summary fashion that Norwalk is a debt collector under the debts owed another definition. (See Dkt. 22, Joint Br. at 22).

providing that "[f]or the purpose of section 1692f(6) [a debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the enforcement of security interests."[5] 15 U.S.C. § 1692a(6); Obduskey v. McCarthy & Holthus LLP, 139 S.Ct. 1029 (2019). The FDCPA provides that the term "debt collector" "does not include" "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was originated by such person[.]" 15 U.S.C. § 1692a(6)(F)(ii); Afewerki v. Anaya Law Group, 868 F.3d 771, 774 n. 1 (9th Cir. 2017) ("Under the FDCPA, a creditor collecting debts on its own behalf is not a 'debt collector.'").

Here, defendant has produced uncontroverted evidence that it was seeking collection of storage fees it claimed plaintiff owed defendant as a result of having the vehicle stored for 695 days. (See Dkt. 53-8, SUF at ¶¶ 20-24; Dkt. 56-1, SGD at ¶¶ 26-28, 38-40; Dkt. 53-2, Washington Decl. at ¶ 12 ("Mr. Aker[] attempted to collect storage fees from me regarding my vehicle during the March 12, 2018 call."); Dkt. 53-2, Aker Decl. at ¶¶ 9, 11-13; see also Dkt. 53-6, Exh. 11, February 28, 2018, Email). In other words, the evidence is undisputed that defendant was a creditor, not a debt collector. As such, the FDCPA does not apply.

Plaintiff, relying primarily on Dowers v. Nationstar Mortgage, LLC, 852 F.3d 964, 970 (9th Cir. 2017), resists this conclusion. (See Dkt. 53-1, Joint Br. at 21-22; Dkt. 56, Plaintiff['s] Opposition to [] Cross-Motion for Summary Judgment or Alternatively, Partial Summary Judgment ("Plf. Opp.") at 3-4). The court in Dowers, dealing with a nonjudicial foreclosure, held that defendants were not debt collectors under the first two prongs of the "debt collector" definition, but were under the limited-purpose definition, 852 F.3d at 969, and thus, only § 1692f(6) of the FDCPA was applicable.[6] Id. at 970-71. The Dowers court was not addressing the issue

---

[5] Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if - (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

[6] The Supreme Court recently clarified that the security enforcement definition "places those whose 'principal purpose . . . is the enforcement of security interests' outside the scope of the

presented here, i.e., a defendant collecting its own debts. Under the circumstances here, Norwalk is not a debt collector within the meaning of the FDCPA. See 15 U.S.C. § 1692a(6) (excluding certain persons from the definition of debt collector).

Defendant also contends that plaintiff's FDCPA claim is barred by the one-year statute of limitations.[7] (See Dkt. 53-1, Joint Br. at 45); 15 U.S.C. § 1692k(d). In connection with the 2016 Action, City Title produced a letter on October 13, 2016, showing that plaintiff's vehicle was delivered to Norwalk on April 4, 2016. (Dkt. 56-1, SGD at ¶¶ 33-34; Dkt. 53-7, Exh. 16, April 4, 2016 Letter (City Title letter directing All American Recovery to "release the vehicle . . . to Norwalk"). Thus, as of October 13, 2016, plaintiff, who was represented by the same counsel representing him in this action, was aware that his vehicle was stored at Norwalk. Yet, plaintiff did not file the instant action until March 1, 2018, more than 16 months ago.

Plaintiff asserts that the one-year statute of limitations does not bar his FDCPA claim because, under the continuing violation doctrine,[8] each of defendant's attempts to collect "a fraudulent debt" from plaintiff was a separate violation of the FDCPA. (See Dkt. 56, Plf. Opp at 5-7). But in arguing that Norwalk is a "debt collector" under the limited-purpose definition of debt collector, subject to § 1692f(6) of the FDCPA, plaintiff argues that his FDCPA claim is based on Norwalk's possession of the vehicle. (See Dkt. 53-1, Joint Br. at 25) (contending that "[d]espite Washington's dispute and this Court's Order, Norwalk continued to effect dispossession of

---

primary 'debt collector' definition, § 1692a, where the business is engaged in no more than the kind of security-interest enforcement at issue" in that case – "nonjudicial foreclosure proceedings." Obduskey, 139 S.Ct. at 1033. The Supreme Court held that "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]." Id. at 1038.

[7] Plaintiff objects to defendant's cross-motion as untimely and for failure to properly meet and confer. (See Dkt. 53-1, Joint Br. at 45-46; Dkt. 55, Plaintiff['s] Objection to [] Cross-Motion for Summary Judgment or Alternatively Partial Summary Judgment). However, the accounts of the parties' meet and confer differ and, in any event, plaintiff was not prejudiced as he was able to provide a response to defendant's cross-motion and did so. (See Dkt. 56, Plf. Opp).

[8] Under the continuing violation doctrine, "which district courts have applied in the FDCPA context, a plaintiff may recover for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period." Muzyka v. Rash Curtis & Associates, 2019 WL 2869114, *6 (E.D. Cal. 2019) (internal quotation marks omitted).

Washington's vehicle until April 11, 2018[,]" which violated § 1692f(6)); id. at 24 (contending Norwalk violated § 1692f(6) "because [it] continued to maintain possession of Washington's vehicle despite knowledge that Norwalk was in possession of Washington's vehicle without a valid security interest"); Dkt. 56, Plf. Opp. at 4 ("Washington's FDCPA violations against Norwalk are solely premised upon Norwalk's violation of . . . § 1692f(6)."). However, taking plaintiff's argument at face value means that defendant is not a debt collector within the meaning of the limited purpose definition of the FDCPA. See 15 U.S.C. § 1692a(6)(F)(ii); Afewerki, 868 F.3d at 774 n. 1 ("Under the FDCPA, a creditor collecting debts on its own behalf is not a 'debt collector.'"). In other words, plaintiff, in effect, concedes that defendant was simply collecting its own debt by arguing that Norwalk's attempts to collect the storage fees – rather than possession of the vehicle in violation of § 1692f(6)[9] – is sufficient to resist defendant's statute of limitations argument under the continuing violation doctrine. (See Dkt. 56, Opp at 6-8) ("Norwalk's continued collection activity in 2018 as well as Norwalk's counterclaim against Washington for the debt . . . all constitute collection activity within the Statue of Limitations").

In short, to the extent plaintiff argues that the continuing violation doctrine applies based on the Norwalk's continued "collection activity," it does not save plaintiff's FDCPA claim since as discussed above, Norwalk was a creditor collecting its own debt, and thus was not a debt collector as defined by the FDCPA.

II.     STATE LAW CLAIMS.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

---

[9] The court notes that in plaintiff's motion for default judgment in the 2016 Action, which was filed on December 26, 2017, just days before plaintiff sent his Dispute Letter to Norwalk, plaintiff represented to the court that City Title continued to possess his vehicle, even though plaintiff knew, as of October, 2016, that Norwalk had possession of the vehicle. (See Washington I, Dkt. 103-1, Memorandum of Point and Authorities in Support of Plaintiff's Motion for Default Judgment at 8 ("Today, almost two years after the wrongful repossession, Defendant [City Title] is still in possession of Plaintiff's vehicle. Therefore, Plaintiff is entitled to a full award of $30,000 under" CITA.) (emphasis in original); see also id. at 9). Based in part on plaintiff's misrepresentation to the court, the court granted plaintiff the "full $30,000 in civil penalties provided under the CITA." (Washington I, Dkt. 109, Court's Order of February 26, 2018, at 10).

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, the power to exercise supplemental jurisdiction is within the court's discretion. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). The court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); see Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7 (1988)). Unless the court is persuaded by "considerations of judicial economy, convenience and fairness to litigants," it must "hesitate to exercise jurisdiction over state claims[.]" Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139.

Here, the court's determination that plaintiff's FDCPA claim fails as a matter of law means there are no remaining federal claims. Additionally, there is no basis for diversity jurisdiction since plaintiff and defendant are both California citizens. (See Dkt. 15, FAC at ¶ 18; Dkt. 53-2, Corbett Decl. at ¶ 3). Under the circumstances, the court declines to exercise supplemental jurisdiction over plaintiff's state-law claims and will dismiss those claims without prejudice. For similar reasons, defendant's counterclaim for declaratory relief is dismissed without prejudice.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Cross-Motion for Summary Judgment or Partial Summary Judgment **(Document No. 54)** is **granted in part and denied in part**. The motion is granted as to the FDCPA claim.

2. Plaintiff's remaining state law claims and defendant's counterclaim for declaratory relief are dismissed without prejudice.

3. Plaintiff's Motion for Summary Judgment or Alternatively Partial Summary Judgment **(Document No. 53)** is **denied**.

4. Judgment shall be entered accordingly.

Dated this 16th day of September, 2019.

                    /s/
              Fernando M. Olguin
          United States District Judge